leads us to our next piece, which is number 24, 1686, Genuine Enabling Technology LLC v. Sony Group Corporation. Mr. Pat Ludemann. May it please the Court, Your Honors. The District Court erred by disregarding the undisputed fact that a person of ordinary skill in the art would consider two logic designs as being structurally equivalent if the two designs perform the same function in the same way. In this case, Your Honor, the function is synchronizing two data streams, and the way is by synchronizing each to a common clock so that both streams are then synchronized to each other. In our case, our expert, Dr. Fernald, determined the way the logic design in Block 34 of Figure 4A performs the function of synchronizing the two data streams. He concluded that it's by synchronizing each to a common clock, and that is the way that he opined. Also, he analyzed the Bluetooth modules in the accused products and determined that the way that the logic design in the Bluetooth modules performed the function, meaning the synchronizing of the two data streams, is by the exact same way, synchronizing each to a common clock. Your problem is this, that in the specification here, Column 5, we have discussion of the way, and the specification says that you use a data selector and code it for the synchronization. So, and he, your witness, seems to admit that that's a description of the way in the specification, and yet he didn't analyze whether the way that the accused products use is substantially similar to the way described in the spec. Your Honor, there are two operative sentences in Column 5 for the synchronization, and Sony also admits that it's the data selector with the clock and the codec. Dr. Fernald did address those specific structures. He testified, he looked for those exact functions, and in fact, under your case in Odetics, for the scope of the Well, he said that he couldn't find those exact functions. He didn't analyze whether those exact functions were present in the accused product, and he said he didn't need to get into the question of substantiality because the way was simply the same as the performance of the function. So respectfully, your Honor, that's not what he testified to. What he said was he looked for those same functions, but what he said was he didn't look specifically to see if there was something called a data selector. But he looked for those functions, and he concluded in his analysis of the Bluetooth modules that he did find, because it's admitted it's a logic circuit, he did find the function, the exact same function that the data selector does in Figure 4A is what's being done If you look at J1813, paragraph 26, he says, I'm not aware of any requirement for equivalency analysis that requires me to address whether Bluetooth modules contain components that are similar to a codec and a data selector in a general sense, or operate similarly to a codec and a data selector in a general sense. And he says it's my understanding I only need to ask whether they operate similarly with respect to synchronization. Yeah, and so in 27, what he's saying is, he...  Oh, 26. I'm not aware of any requirement that Bluetooth modules contain components that are similar to the codec and the data selector in a general sense, or they operate to a codec and a data selector in a general sense. It is my understanding that the equivalency analysis need only address whether the accused products have structures that are similar to, operate similar to a codec and a data selector with respect to synchronization and encoding, that's precisely the analysis. And then in the next paragraph, Your Honor, he goes through at the exact level of what's in the spec in column 5 for why the logic in the Bluetooth module performs those exact same functions. Let me, first I think one particular question and then I want to get back to what I think you started with. You don't assert that either of two things, that what's shown in drawing in figure 4B is necessarily a part of the data selector in 4A. And I think your expert said specifically it's an example, but 4A is, but I'm sorry, 34. Item 34 on 4A, which is the logic design of that, does not necessarily include the quite specific process laid out in figure 4B, right? Yes, it's an illustration. Also, the codec is not in fact part of item 34, right?  So your point, as I think you started with, is this. Synchronizing is the function. The way is to do that by using a common clock. Yes. And those are different and your argument is your expert said that and that's all he needed to say. Yes, but he went one step further because in this record, both figure 4A, and this is undisputed, and the Bluetooth modules both use logic. And so he said at the level that it's described, which is exactly what Odedic says, they're the same because they both, what figure 4A teaches is it just has a box for data selector and he's saying, hey, that's logic. That's what the patent discloses and the logic performed, the way it synchronizes is to the common clock, each signal to the common clock. But he didn't analyze whether it performs the logic in a similar way. Yes, that's the exact same way that he then analyzed the Bluetooth module and he concluded that the logic in the Bluetooth module does the exact same thing, synchronizes the two data streams to a common clock. Yes, but only in that he didn't decide whether the logic disclosed by the selector and codec was similar, right? He did do that, your honor. Well, he couldn't really have because he didn't know what was under the hood of the Bluetooth module. He didn't know what, we're not doing, he never did like a one-to-one correspondence. He did a one-to-everything correspondence where he said, I'm looking at figure 4A and I just see logic. And any and all forms of logic, no matter how elementary or super sophisticated way of synchronizing to a common clock is going to be good enough, is going to be interchangeable and equivalent and substantially the same way. And the scary thing about that is that that feels very abstract and almost indefinite in terms of doing the kinds of comparisons that we normally expect for function-way results. And it tends to make the function-way result test look like the function result test because it ends up being that all ways are substantially the same way. So here, let me break that into a couple of different legal aspects for your case law. One is, Odetics tells you the level of detail and that's the exact level of detail he's following. But to your exact point on his analysis where he says they both follow the same operation, which is they've synchronized the two data signals to a common clock. What he said was, and he didn't just conclude on it, he used textbooks and fundamental theorems to actually demonstrate why it's true in this narrow area of logic circuits that if you have a function and it's doing it the same way or doing the same operation. Can I just say that the focus on the logic circuits, I at least and I think others may bristle at that, that that just can't be enough. And it seems to me a separate point that if, as the other side not only accepted but proposed, the structure, and I didn't argue indefiniteness, that the structure for purposes of 112F here is the logic design of 34. You have to look and see how much detail is provided in the spec about that and it is, in your view, nothing more than use a common clock. Nothing more. We haven't talked about different logical configurations of the basic logical operators, which sounds frighteningly too broad. And if I remember right, your expert went through the several different, I think, Bluetooth regimens, which I guess were about the accused products, to try to show that they were using a common clock. And I guess what I'm focusing on here, this is obviously partly for the other side to address too, is why isn't that enough because no further detail is required of item 34? We agree with you 100%, Your Honor. The only reason I was going to the additional place is because of the question Judge Chen was raising. But your expert did all this thing about basic logic diagrams, which sounded like, whoa, if we're going to buy that, that can't possibly be right. So that's not. So you're right. Under Odetics and under what's disclosed, the level of detail is exactly what the patent requires, and that is sufficient. Our expert did exactly what we do in Odetics. The patent discloses a clock and just the function of data selection, and it describes exactly that. There's two operative sentences. A piece of, if I remember right, your presentation in the brief was to say, and I'd like you just to explain this to me because I don't understand it. There were several different ways of synchronizing two different streams. One of them is to use a common clock. Another is, and then I think you said something like synchronize one to the other. And at that point, my intuition went blind. So tell me, if there's only one way to synchronize, then way collapses into function, and that's a problem.  And there isn't. So when Dr. Frenal got to testify in front of the district court, he explained, he tried to explain this, and he said there are many ways, and those are the two that you're talking about. Explain the second one. So the second one he said is you can use the first signal, and I'm not enough of an engineer to say this correctly, but you can use the first signal and off the edges in the first signal, then synchronize the second signal to that first signal without using the clock. So you're not synchronizing each signal to the clock and then saying those two are now synchronized. You're directly synchronizing the two signals to each other. And that's the example he gave to the judge where this is more indirect. So it's synchronizing the first signal to the clock. It synchronizes the second signal to the clock. At trial, in the courtroom, he was using an actual wristwatch, but he said now that then means these two signals are synchronized. He said you can also do the math such that you synchronize this signal directly to this signal without each being synchronized to the clock. And so those were the two that he talked about with the judge and said there are others, but he didn't then go into detail on the others. So it's definitely true that it's not under this record. There's only one way to synchronize two signals to the clock. But to your point, under odetics and under the patent, the only disclosure is the clock and the data selector. There's not dates and all of that. That's the exact level at which he also did the analysis. So then do we need at least, even if that were all true, something to look at in the Bluetooth that could make us feel like a reasonable fact finder to find a structural equivalent to a data selector? So, Your Honor, what you can find in the Bluetooth, and his analysis is detailed on this, is he goes through and explains in detail based on the specification and the exact data packets that Sony selected. Why it is that it's a bit stream, why it's necessarily synchronized. Each stream is synchronized to a common clock. And he even has told the judge down below, to meet the Bluetooth specification, it must have a common clock. What are the best part, best pages in the joint appendix that we might look at to see what you just said, your witness said? So, Your Honor, 1605 to 1610 is his main analysis and he even has a picture in there, if I remember right. It looks like a butterfly. So, when he walks through in 1606, he starts to show you the different serial processes and why that's happening. And then he even goes through and shows the different speeds at which it could be done on 1609. If you were to look at that analysis, that is his detailed analysis for why you can believe, or why a jury could believe, that this exact process is happening and it is synchronizing to a common clock. Okay, but what about the selector question? So, one question I have is that the district court seemed to be quite clear in multiple different orders that your theory of what is the corresponding way or structure is synchronizing two streams using a bit rate clock. And that your theory of the way was no longer resting on really any other element from figure 4A, including the selector. That's the way I read it. The district court was under the impression, after reading the expert report, that there was going to be a reliance on codec and reliance on the data selector 50. But then, during the oral argument, it became quite clear that no, the theory that you were going to be advancing using Dr. Furnall was just the bit rate clock, period. And so, then the next question for the district court was, did Dr. Furnall do enough to explain away why every other element of box 34 kind of just dissolves away, including the data selector? And the district court wasn't convinced that that happened. And, Your Honor, I know there may be other spots, but Appendix 1815, this is one where it's part of the reason for the rehearing, is Dr. Furnall used the word synchronizing, and then the court said it's actually sampling. And so, the process of sampling is that data selection, because it's the process of going to each of the two data streams to be able to do this. And that is the data selection, is the sampling of each of those streams in the process of synchronizing. I'm not following this. I mean, he certainly testified that it used a bit rate clock, and that was the same way. But I don't see where he ever analyzed whether it used what was the equivalent of a data selector, even though he admitted that a data selector was part of the structure that performed the synchronization function. Your Honor, if you read the description, and in particular what I'm talking, the sampling of the signals is the selection. It's exactly what the patent, when he did it with the example 4B, it's exactly what the patent does, too, for data selection. It's to be able to sample to the correct signal. And that is the data selection, both in the patent and what he describes in his report. So did the confusion with the district judge wasn't as… Well, I guess now I'm getting a little confused. I don't see anywhere in your opening brief where you said the district court misunderstood your infringement theory as to what was substantially the same way. And the district court understood your theory on too high a level of generality by only focusing on the bit rate clock. Likewise, that was incorrect because your position all along through briefing was to rely on other things that Dr. Fernald might have said. There's also – we've got an equivalent of our disclosed selector because there's something inside of Bluetooth that's necessarily doing this selecting process that the box selector serves. And that is what he did. Well, you didn't say that in your blue brief is my point. Well, so the reason the blue brief is written the way it is and it's really our perception of what happened down below and is where the judge started to go differently was not at the level that we're talking about it. It was when Sony posited that we don't know the internal structure of these things and what is – how do we know then if you can't identify what's different about the specific logic components then and how they're connected, how can you say they're insubstantial? And that's where the judge really went. It wasn't at the level that we're discussing it right now. And so that's what sent us all over. And so when he says the details, he's not talking about it at a higher level. He was down at that level and that's why – I don't know what you mean by what was the error in the district court's approach. I mean this is someone that clearly spent a lot of time on this very issue over and over again. So where – what precisely did he do something wrong? So, Your Honor, where he did something wrong is he went to a level of detail that's beyond what's in the patent because what he was finally troubled by is not at the data selector level where we were talking about it just a second ago. What he was worried about was it's a – where you started. It's a black box inside there for exactly what the – For the Bluetooth module. For the Bluetooth module, what the components are and how they're exactly arranged. And because he was down in that – at that level, which is not the level at which the patent is written, he said, well, and that's what troubled him all along. That's why every sentence when he writes the sentence saying you don't know what's in there, you can't then say why it's substantial or insubstantial. He's not talking about it at the level of what the patent describes. He's at that next level of detail where the schematics would be useful because then you would know the exact – I'm sorry, let me just finish this one. You'd know the exact components and the arrangement. Okay, but look, under the Cypress Semiconductor line of cases, you've got to have specific testimony and linking argument. Where is the specific testimony by your expert who says I recognize the data selector as part of the way, as part of the structure, and I find that's equivalent in the accused device? Your Honor? Where does he say that explicitly? If he – It's not – it's not sufficient now that you come in and piece together bits of his testimony that could support that notion. He's got to say it, and I don't see where he said it. Your Honor, if you look at Appendix 1809 at 18, I believe he explicitly says even though I did not specifically analyze the Sony accused products to see if they incorporated structures that were specifically named data selector or codec, I absolutely did analyze the accused products to see if they incorporated any structure by whatever name that performs the relevant functions performed by the data selector and the codec in Figure 4A. I determined based on my investigation and testing of the Sony accused products that the logic in the Bluetooth modules synchronizes the user input stream with the input stream by synchronizing both streams to a common plot just as the data selector and codec do in Figure 4A of the 730 patent. So it comes down to anything that will do the function synchronizing the streams using a common clock is your theory of the way. It is, and it is the way. It is the way. And so any and all forms of logic that will do the function is similar structure. Digital logic, and that's what he – I mean there's a basis for that. But that is the theory, and so therefore because there must be some logic inside the Bluetooth, that's good enough. There's not just some logic. It's admitted that the relevant part of the Bluetooth that does this is logic. Sony does not dispute that. That's not an area of where we're saying, oh, there's different types of circuits and we're fighting about that, so that's a gap we have to close. Sony has admitted that the relevant portion of the Bluetooth module that does this exact claimed function of synchronization is digital logic. And so that on this record is undisputed as is the way, as is that it samples to – as it uses a common clock to synchronize. None of that is actually disputed. The bottom line, the end of the day, is you're standing up here and you're arguing and piecing together bits of what the experts said, whereas what we're missing is a specific statement recognizing that the data selector is part of the way and that the accused device has an equivalent to the data selector. Your Honor, the data selector being part of the way in terms of the patent itself is in 1604 paragraphs 124 to 126. And then the rest of it is in his analysis of the Bluetooth. He makes very clear that it's the exact same functions that are being performed, including clarifying in that other page in 1809 that he's talking about the data selector and the codec exactly as in figure 4A. And that does link it all together. Okay, I think we're out of time. We'll give you two minutes for rebuttal. Mr. Lloyd. May it please the Court. Seth Lloyd for the Sony Entities. Genuine enabling technologies appeal fails because it lacks the specificity and completeness of proof required to show insubstantial differences between the claimed framer and the Bluetooth modules in Sony's products. Indeed, genuine lacks any evidence about those differences because it failed to seek discovery into the Bluetooth modules. That left genuine technology to assert only a single similarity at a high level of generality that this Court has consistently rejected and to rely on arguments that attempt to wrongly eliminate the way requirement from the function way result test. What do you think is the structure or structures in figure 4A that we should be focusing on as the corresponding structure for doing the synchronizing of the two streams? Well, we can look to Dr. Fernald's own analysis and this is... Well, I'm asking you for what is Sony's view of that question. Is it the entire box 34 or is it the data selector and the bit rate clock? What is it? Yeah, so the District Court determined that at Claim Construction Judge 10 and the corresponding structure that the District Court concluded is the framer, the entire box 34. That's the corresponding structure. But then there's this rule that you don't have to do this true component by component analysis and comparing off whatever is the identified corresponding structure to an accused product, right? I think I would... And so then, therefore, certain subcomponents really become more important than other subcomponents of a corresponding structure. The Court certainly said that some subcomponents can be more important and that there can be situations where, you know, of course, sorry, the structure in the accused device does not need to have all of the subcomponents. But I think what the problem in this case and what's missing here is any explanation for why one component is supposedly more important than another or why some components in the analysis can be ignored. That's what the District Court recognized is that ultimately, it's not just that they reduced the entire structure to just there's a bit clock and are the two streams synchronized to a bit clock. The problem is there's no explanation for why that detail is the only detail that matters. And that's especially that the lack of explanation is especially apparent here because Dr. Fernald, and this is in his declaration, his second declaration, so after the District Court had already issued the Dalbert ruling, in his second declaration at Appendix 1806, Paragraph 9, he recognizes, as the District Court had previously said, that the codec and the data selector in Figure 4a both play roles in the synchronization of the user input stream and the input stream as described in the 730 patent. So he recognized, as the District Court repeatedly explained, that those other components were relevant. Now, the codec, he said, is not in correctly, that the codec is not part of Block 34, but the codec, as he explained and as the District Court recognized, the codec works together with Block 34 to synchronize the input stream. You agreed and, indeed, proposed that the structure, apparently, in your view, sufficient to avoid indefiniteness, didn't include the codec. It's just whatever is going on at some logic level, logic design of Block 34. So, obviously, stuff is going into that block, and the codec is putting stuff into that block, and so, of course, it is relevant to whether you end up doing synchronization, but you agreed that the structure, legally sufficient, in your view, which I do scratch my head about a little bit, is just what's in that block. So we don't get to go to a greater level of specificity than is identified in the patent, and I'm not sure what that is except use a common clock. Well, I think at least two responses to that, Judge Strano. One, that the codec is relevant when we're analyzing the way that the structure, so I agree, the structure that has been identified here is Block 34, but the way Block 34, as Dr. Fernald admitted, the way Block 34 synchronizes at least the input stream is by using the codec. But what comes out of the codec, so some stream is coming. It's the input stream, yeah, but not just what comes out of, but also the codec, or sorry, Block 34 sends signals to the codec, and the codec then uses the signals from Block 34 to synchronize the input stream. And then what's coming into the input stream, or sorry, what's coming into Block 34, the patent in Column 5 talks about this, is an already synchronized input stream. So the input stream has already been synchronized to a bit clock when it comes into Block 34. But I think it's important not to lose, I think, kind of the big picture conclusion that the district court rightly recognized, which is in paragraphs 125 to 126, here again I just pointed you to in paragraph 9 of the later declaration. Dr. Fernald recognizes that the patent gives these details, but then he ignores these details to reduce it just to a bit clock without explanation. That's the problem here. There is no, and this court has been clear, there's a specific evidentiary requirement on patent owners seeking to use structural equivalence. So on that, this is the particularity and linking argument. We've said, I gather, in a case called Applied Materials, that that does not apply to 112F analysis, just general doctrine of equivalence. I don't know whether that was correct or not, but we did say it. There's a footnote that I think questions it. I thought it actually said it there, and then it was referenced in a later case with a kind of eyebrow raise. I don't want to argue with you about what the footnote says. My memory is the footnote just says we have never applied it. It does not say we do not apply it. But I think what this court has said is the particularity and linking argument requirement is part of the function-way-result test, and the court has also consistently said that at least the way and the result are the same for both the doctrine of equivalence and structural equivalence under 112F. So I'm not sure how there could be a gap there, and I think the only additional. And you don't think it's a fact question. So perhaps Dr. Fernald said, I look at a bunch of complexities in this figure, almost all of it in the southern hemisphere is unimportant ways of getting the clock information up to where it's going to actually be used in the northern hemisphere. And the only thing here that matters is the use of a common clock. Now, why is it not a factual question whether that's right or not? It may be a factual question, Judge Strano, but Dr. Fernald's testimony was not even as specific as what you just gave. He acknowledged all of the detail in the patent, figure five, block 34, and in fact talked about figure 4B. He acknowledged that detail, but then when he analyzed the way, he just said the way is, without explanation, without saying the other information is unimportant, he just said the way is it synchronizes to a bit clock. That was the sum total, and that was the problem the district court recognized. The other side, I think you heard today say the district court was focused on other issues, but if you look at the district court's summary judgment opinion at appendix 13, right at the bottom talks about the data selector that we were just talking about, where the patent is clear that one of the way, one part of the way, at least in figure 4A and block five is this data selector, which receives the two different input streams and sometimes takes data from one and sometimes from the other, and the district court at the bottom said, here Genuine has provided essentially no information about how the accused Bluetooth module differs, much less why any differences should be viewed as insubstantial. For example, block 34 feeds both data streams into a data selector. It is unknown whether the Bluetooth module does the same thing, or if it does not, whether the choice to forego a data selector is substantial. The problem is there is no evidence, nor even explanations, for why these other details do not matter, and why a person of skill would move beyond them, other than this blanket assertion that in logic devices, if they achieve the same result, then they're equivalent, which I think the district court recognized is not consistent with this court's precedent and this court's law. I think I heard the other side say something like it's undisputed that in the world of logic design, all different forms of logic that will produce a certain operation are equivalent. Is that right, that it's undisputed? I think I took what the other side to be saying, is their expert put in that testimony and that summary judgment, and that has to be accepted as true. But I think there are two problems with his testimony. One is what he actually says is that logic devices rely on a comparison of the operation performed. And then it was clear to the district court, in fact, because Dr. Fernald said so, that what he means by operation performed, this is out of appendix 28, what he means by all you have to do is look at the operation performed is look at the result. That may be true as a factual matter that maybe somebody looks at the result, but this is not a factual question of what's required to prove equivalence for means plus function claims. That's a legal standard. The legal standard is that you have to show substantially the same way, at least if they accept the framework of way function results. And under that test, the legal standard requires you not just to look at the result, but also to look at the way. Just so I can understand your position, I understand your baseline position, which is whatever the plaintiffs did, it was at too high a level of generality, period. Okay, well then what, in your view, should they have done? Then I'll get a better understanding of what your conception of what is correct and incorrect here. What this court has required is to- The facts of this case, what should they have done here? I don't need to hear about the law. Applying the law to the facts of this case, what did they need to do? They needed an explanation for why, among all of the things that the patent describes in column 5 and in block 34, why the only thing that matters is that there's a bit clock and that the two streams are synchronized to it. They needed an explanation for what are the details of the operation in the accused Bluetooth modules. Here we know they know nothing about the internals of these Bluetooth modules. All they know is a few things that may come in based on the Bluetooth specification and the outputs. We have no idea what other things may be going on inside of the Bluetooth modules. They needed explanation and details about what's happening on the inside of those Bluetooth modules, and then they needed explanations for why the similarities and the differences. This court has never, as far as the cases we've seen, has never allowed a single similarity without any explanation of the differences to be sufficient because the test ultimately is are there insubstantial differences? Even under the function way result test, are there insubstantial differences in the ways? And so when you only identify and discuss a single similarity with no explanation, no evidence about what the differences are, that's insufficient. I think all of those should have been done here. None of them were done here, and the lack of any of those is dispositive. Would I understand correctly that that last point you made is independent of the particularity linking argument standard? Yes, that's right, Judge Strano, and I think this court's recent case in Traxo, which the district court in the papers here relied on, is very similar. That was a case also where there was significant detail in the patent, a detailed algorithm, but in assessing the function way result test, the expert ignored substantial portions of the algorithm without any explanation. I think those are the same facts that are here. There's an issue of detail on the patent side and an issue of detail on the accused product side. What was ignored that's actually a requirement of Box 34 on the patent side? Because 4B is not required. It's just one example of how 34 can work. So what was missing? Before I answer that, I would just add there's a third thing, which is detail on the patent side, detail on the product side, and then a comparison of the two. But what is missing? At least the data selector that the district court repeatedly pointed to and recognized. What does Column 5 or anything else in the patent say about the innards of the data selector? I think we don't have innards of the data selector, but we have operation. And the issue here is the way prong of the function way result test. And what Column 5 says is it's the data selector that synchronizes and combines the two data streams. If there's no more detail than that in the description in this patent of the data selector, then you can't say that details are being ignored when you say, oh, look at the accused products. They do the same thing. Yeah. There is more detail, Judge Shana. One of the examples that I think the patent walks through is that you have both input streams coming into the data selector. And there's what's called a control signal. It's SEL. It is not itself the bit clock. It's derived from the bit clock through a – What does SEL stand for? I don't think the patent says, I assume, select. Okay. But I don't think the patent specifies. But it's not – the SEL signal is derived from the bit clock, but not just the bit clock. There's other circuitry. And then based on this SEL signal, sometimes the data selector is taking the input from the input stream, and other times it is taking the input from the user input stream. The patent talks about those details. Whether those details matter or not, that's the problem that the district court recognized. There is no explanation here. Just one – I see I'm out of my time, but can I just answer one?  So the other side pointed to their expert's second declaration at 1809 as supposedly – or as where he addresses the data selector in the Hughes products. But if you look at what he said – make sure I do the right page. If you look at what he said, it's paragraph 18 of 1809. He says he absolutely did analyze the Hughes products to see if they incorporated data selector and codec, because he recognizes – he never contested that the codec is relevant, but even just the data selector. He says he analyzed it, but he never goes on to say what the analysis showed in terms of – Right. To the extent he says what the analysis shows, Judge Steidt, it is that he concluded there must be a data selector because they synchronized to a bit clock. All – his entire conclusion just reduces to – and I think, Judge Shen, you asked a question along these lines. If there's a bit clock and if they're synchronized to a bit clock, then it must be the same way. And the district court rightly recognized that this court has consistently required more specificity than that, whether it's particularized linking – particularized testimony linking arguments or kind of a general requirement to explain the basis for the conclusion. Okay. Unless there are further questions, we'd ask that you affirm. Mr. Cardinali. You have two minutes. Your Honor, if you – when you get a chance, if you looked at page 8 of the grade brief, you can see what Sony required for this particular function, which is the codec, the data selector, and the bit rate clock. But on the right side of that, we have in the column specifically what Dr. Fernald said. And for the data selector, you can see he specifically talks about sampling, which is why I tried to point you to that paragraph where he said synchronizing and sampling is the same thing. And then if you look at appendix brief 1811, where he's talking about the way he again talks about specifically sampling. And the reason I'm just saying that is on this data selector, he looked at the patent and said what the data selector is doing is sampling from each of the two streams. And that's exactly what he talks about when he's talking about what happens inside the Bluetooth module. And that's why those pages 1605 to 1610, when he walks through the bit process, the serial bit processes in the Bluetooth module, to give you comfort, to give a jury comfort that these exact processes must be happening and they're synchronizing to a common clock, that is his basis. But when we talk about this data selector, I just don't want it to go too far, is if you look at page 8, you can see the quotes. But the data selector, as he's determined from the patent, is for sampling the streams. And that's why when he's doing the same analysis with the Bluetooth module, he's addressing exactly the same thing. And in terms of he, in 1605 to 1610, and especially in paragraphs 124 to 126, he definitely goes through what the patent requires and why those elements are there, the data selector, the clock, and even the codec to the extent it matters. And then he does those exact same functions, just like he testified to in the paragraphs we talked about in 1800. But he looks at exactly those same functions in the Bluetooth module to draw his conclusion and that it's all to the same thing, the same way. This patent expired, right? Yes. Okay. Yeah, it expired two years ago, maybe. 2018. 2018, right, 2018. I think we're out of time. Thank you. Okay, thank you.